**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                    :
OKK USA CORPORATION,                :   CIVIL ACTION NO. 11-4167 (MLC)
                                    :
        Plaintiff,                  :   MEMORANDUM OPINION
                                    :
        v.                          :
                                    :
GENERAL TOOL SPECIALTIES, INC.,:
                                    :
        Defendant.                  :
_____:
```

**COOPER, District Judge**

　　Plaintiff, OKK USA Corporation ("OKK"), brings this action
against Defendant, General Tool Specialties, Inc. ("General
Tool"), seeking damages resulting from an alleged breach of
contract for the sale of an OKK Vertical Machining Center Model
V9000 ("the Machine").  (Dkt. entry no. 1, Compl.)  General Tool
denies liability, asserting, <u>inter alia</u>, that OKK "is barred from
recovery by reason of [its breach of] implied warranties" and
that the underlying contract is void, for lack of either
consideration or a meeting of the minds.  (Answer at 3 (Fifth,
Thirteenth, and Fourteenth Separate Defenses).)[1]  General Tool
also seeks, <u>inter alia</u>, damages resulting from OKK's alleged
breach of the implied warranties of merchantability and fitness
for a particular purpose.  (<u>Id.</u> at 7-8.)

_____

　　[1] Although the Answer and Counterclaim constitute one
pleading, General Tool assigned paragraph numbers 1-27 to the
Answer and, again, to the Counterclaim.  (<u>See</u> dkt. entry no. 5.)
The Court will thus cite to the Answer and Counterclaim
separately.

OKK now moves pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss General Tool's Counterclaims for breach of the implied warranties of merchantability and fitness for a particular purpose, asserting that the contract at issue, the parties' Sales Contract ("Sales Contract") precludes such claims. (Dkt. entry no. 8, Mot. Dismiss.)  The Court will decide the motion without oral argument pursuant to Local Civil Rule 78.1(b) and, for the reasons set forth below, will grant the motion.

**BACKGROUND**

In July of 2010, OKK, a corporation with its principal place of business in Illinois, and General Tool, a corporation with its principal place of business in New Jersey, executed the Sales Contract, whereby OKK agreed to sell and deliver the Machine to General Tool.  (Compl. at ¶¶ 1-2, 4; Answer at ¶¶ 1-2, 4; Counterclaim at ¶ 3; <u>see also</u> Compl., Ex. A, Sales Contract.)  In exchange, General Tool agreed to give OKK two payments: (1) a down payment of $6,000 by August 2, 2010; and (2) an additional payment of $252,000 within 30 days of delivery of the Machine. (Compl. at ¶ 7; Counterclaim at ¶ 5; Sales Contract ("Note: Cust [sic] 6000 down pymt [sic] to be received on 8/2/10").)

The Sales Contract is only one page long.  It sets forth the terms of the sale and delivery of the Machine, including the relevant specifications of the Machine, the price to be paid for

the Machine, the delivery terms, and the payment terms.  (Sales

Contract.)  Below such terms, in the same (or reasonably similar)

font and typeface, it states:

> This Sales Contract is subject to the terms and
> conditions of sale set forth on the attached hereof.
> This Sales Contract must be signed by the Buyer in the
> name of the firm or corporation, by a member of the
> firm or officer of the corporation, authorized to act
> on behalf of and to make binding, contractual
> commitments for the firm or corporation.

(Id.)  Below this statement, but immediately above the Buyer's

signature line, it states: "Accepted: The Sales Contract

including the terms and conditions of sale contained hereof are

accepted."  (Id.)  A representative of General Tool signed the

Sales Contract.  (Id.; see also Compl. at ¶ 4; Counterclaim at ¶

3.)

The OKK USA Corporation Terms and Conditions of Sale, which

were attached to the Complaint and incorporated by reference in

the Counterclaim (see Counterclaim at ¶ 3), state that:

> 7. **LIMITED WARRANTY.**
>
> (a)   Seller warrants that the Products will be free
> from defects in material and workmanship for a period
> of one (1) year from the earlier of either: (i) the
> date the Product is originally installed at Purchaser's
> place of business; or (ii) the date that the Product is
> first delivered to Purchaser and Seller attempts or is
> available to install the Product at Purchaser's
> facility.
>
> (b)   **THIS LIMITED WARRANTY OF SELLER IS IN LIEU OF ALL
> OTHER WARRANTIES, AND SELLER HEREBY EXCLUDES ALL OTHER
> WARRANTIES, EXPRESS, IMPLIED STATUTORY OR OTHERWISE**

3

**CREATED, WHICH ARE APPLICABLE TO THIS TRANSACTION, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE.**

\* \* \*

13. **GOVERNING LAW, JURISDICTION AND VENUE.** This contract will be governed by and construed in all respects by the internal laws and decisions, other than any conflict of laws provision, of the State of Illinois, including but not limited to all matters of construction, validity, enforceability and performance. . . .

(Sales Contract at ¶¶ 7, 13 (bold typeface and capitalization in original).)

General Tool gave the $6,000 down payment to OKK on or about August 2, 2010 and OKK delivered the Machine to General Tool on or about August 6, 2010.  (Compl. at ¶¶ 6-7; Answer at ¶ 6; Counterclaim at ¶¶ 4-5.)  The Machine was leveled soon thereafter, and installation was completed on or about August 17, 2010.  (Compl. at ¶ 6; Counterclaim at ¶ 6.)

OKK filed the Complaint on July 20, 2011, asserting that "General Tool has repeatedly failed and refused to pay to OKK the purchase price balance of $252,000, despite the fact that General Tool has been using and continued to use the OKK Machine on a regular basis."  (Compl. at ¶ 8.)  General Tool acknowledges that it has not paid the purchase balance of $252,000.  (Answer at ¶ 8.)  General Tool alleges, however, that the Machine was improperly installed and otherwise defective.  (Counterclaim at

4

¶¶ 7-12.)  General Tool further alleges that OKK was aware of the issues and defects relating to the Machine, that OKK attempted to cure such issues and defects, and that, through March of 2011, the Machine continued "not to function within the tolerance and specifications set forth in the contract, within the trade and as anticipated by the parties to this action."  (See id. at ¶¶ 12-13.)  General Tool thus asserts that it is not liable for breach of contract and, further, raises Counterclaims against OKK, seeking, inter alia, damages for OKK's alleged breach of the implied warranties of merchantability and fitness for a particular purpose.  (Answer at ¶ 17; Counterclaim at ¶¶ 18-23.)

OKK moved to dismiss General Tool's Counterclaims for breach of the implied warranties of merchantability and fitness for a particular purpose on September 23, 2011.  General Tool failed to respond.[2]

## DISCUSSION

### I.   Rule 12(b)(6) Standard

A party may move to dismiss a counterclaim pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6); see also RP Baking LLC v. Bakery Drivers & Salesmen Local 194, No. 10-3819, 2011 WL

---

[2] Despite General Tool's failure to file opposition papers, the Court must analyze General Tool's Counterclaims to determine whether they state claims upon which relief can be granted.  See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991).

2912861, at *3-4 (D.N.J. July 18, 2011) (recognizing and granting plaintiff's Rule 12(b)(6) challenge to defendants' counterclaim). In addressing a motion to dismiss a defendant's counterclaim under Rule 12(b)(6), the Court must accept all of the factual allegations contained in the defendant's answer and counterclaim as true, construe the counterclaim in the light most favorable to the defendant, and determine whether, under any reasonable reading of the counterclaim, the defendant may be entitled to relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  At this stage, a counterclaim "must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when [it contains] factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged."  See Iqbal, 129 S.Ct. at 1949 (citation omitted).

The Court, when considering a motion to dismiss filed pursuant to Rule 12(b)(6), generally may not "consider matters extraneous to the pleadings."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  The Court may, however, consider certain documents without converting the motion to dismiss into one for summary judgment.  Angstadt v. Midd-West Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004).  Such documents

include exhibits that are attached to the pleadings, and
documents that are integral to or explicitly relied upon in the
pleadings.  Id.

## II.  Choice-of-Law

Because General Tool's Counterclaims are based on state law,
and because the Court has jurisdiction over this matter pursuant
to 28 U.S.C. § 1332, the Court must, at the outset, consider
which State's law applies.  The Court recognizes that New
Jersey's choice-of-law rules govern this determination, as a
federal court sitting in diversity must apply the forum state's
choice-of-law rules.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313
U.S. 487, 496 (1941).

New Jersey generally gives effect to parties' contractual
choice-of-law clauses, striking them only if they fail the "most
significant relationship" test.  P.V. ex rel. T.V. v. Camp
Jaycee, 962 A.2d 453, 459-60 (2008).  This analysis, which must
be performed on an issue-by-issue basis, is a two-step process.
Id. at 460.  The first step is to determine whether an actual
conflict of law exists, for if no conflict exists, the law of the
forum state applies.  Id.  Second, if a conflict does exist, the
Court must determine which state has the "most significant
relationship" to the claim by assessing the cause of action.  See
Nikolin v. Samsung Elecs. Am., Inc., Civ. No. 10-1456, 2010 WL
4116997, at *3 (D.N.J. Oct. 18, 2010).

7

Applying the factors necessary to determine choice-of-law in a contract dispute, however, is a fact-intensive inquiry that can be premature at this stage of the proceedings.  See Harper v. LG Elecs. USA, Inc., 595 F.Supp.2d 486, 491 (D.N.J. 2009) (postponing choice-of-law analysis, for purposes of ruling upon motion to dismiss claims arising from alleged breaches of express and implied warranties, "until the parties present[ed] a factual record full enough").  The Court finds that, as in Harper, the factual record here is not yet "full enough" to make a choice-of-law determination as to General Tool's Counterclaims for breach of implied warranties.

The Court must, however, still determine whether General Tool has succeeded in stating claims, such that those claims survive the motion.  To make this determination, the Court must rely on some body of law.  For the purpose of examining General Tool's Counterclaims under the Rule 12(b)(6) standard, the Court will apply Illinois law because: (1) General Tool's Counterclaims arise out of the Sales Contract, which was referenced and relied upon in the Counterclaims (Counterclaim at ¶ 3); (2) the Sales Contract states that it shall be governed by Illinois law (Sales Contract at ¶ 13); (3) OKK asserts that Illinois law controls this action (dkt. entry no. 8, Plt. Br. at 3); and (4) General Tool, by failing to respond to the motion, also failed to respond to OKK's assertion that Illinois law controls this action.  See

8

<u>also</u> <u>Harper</u>, 595 F.Supp.2d at 491 (examining claims, for purpose
of ruling upon Rule 12(b)(6) motion, under assumption that a
given state's law controlled because choice-of-law analysis was
not yet proper).

**III. Under Illinois Law, the Court Must Dismiss the Counterclaims**

When ruling upon the motion, the Court must, as noted above,
construe the facts of record in the light most favorable to the
non-moving party.  <u>See</u> <u>Iqbal</u>, 129 S.Ct. at 1949-50; <u>Phillips</u>, 515
F.3d at 233.  After examining the record, and after construing
the facts in the light most favorable to General Tool, the Court
has determined that it must dismiss the Counterclaims at issue.

Section 316(2) of the Illinois Commercial Code ("Section
316(2)") permits parties to a contract for the sale of goods to
exclude warranties which, under other circumstances, would be
implicit in their contract.  Section 316(2), with respect to the
implied warranty of merchantability, states that "to exclude or
modify the implied warranty of merchantability or any part of
it[,] the language [of the exclusion] must mention
merchantability and in case of a writing must be conspicuous[.]"
810 ILCS 5/2-316(2).  Section 316(2) further states, with respect
to the implied warranty of fitness for a particular purpose or
use, that "to exclude or modify any implied warranty of
fitness[,] the exclusion must be by a writing and conspicuous.
Language to exclude all implied warranties of fitness is

9

sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'"   <u>Id.</u>

The Sales Contract here sets forth a limited seller warranty in paragraph 7(a).  Immediately thereafter, in paragraph 7(b), the Sales Contract notes that the limited seller warranty "<u>is in lieu of all other warranties</u>, express, implied statutory or otherwise created, which are applicable to this transaction, <u>including any warranties of merchantability or fitness for a particular use.</u>"  (Sales Contract at ¶ 7(b) (bold typeface and capitalization omitted, emphasis added).)  Because the paragraph 7(b) exclusion is in writing, explicitly mentions the warranty of merchantability, and explicitly excludes all other implied warranties, the Court determines that the Sales Contract facially satisfies three of the four requirements for excluding the implied warranties of merchantability and fitness for a particular purpose.

The Court must determine as a matter of law, however, whether the purported exclusions were sufficiently conspicuous. <u>Carpenter v. Mobile World, Inc.</u>, 551 N.E.2d 724, 728 (Ill.App. 1990).  Section 201(10) of the Illinois Commercial Code ("Section 201(10)") provides guidance.  Under Section 201(10):

> "Conspicuous", with reference to a term, means so
> written, displayed, or presented that a reasonable
> person against which it is to operate ought to have
> noticed it.  Whether a term is "conspicuous" or not is

a decision for the court.  Conspicuous terms include the following:

> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and

> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

810 ILCS 5/1-201(10).

In Carpenter, the Illinois Appellate Court addressed a similar case and discussed Illinois precedent:

> [I]n Anderson v. Farmers Hybrid Companies [408 N.E.2d 1194 (Ill.App. 1980)], a purported disclaimer on the back of an order confirmation slip for the sale of unbred female pigs used for breeding purposes (gilts) contained a disclaimer on its back in print larger than the rest of the print on the back but in smaller print than that on the front of the slip.  In small print on the front of the slip, a statement indicated the order was subject to conditions on the back of the slip.  Also noting that the nature of the slip was such that a person might think nothing was on the back of the slip, the appellate court held the purported disclaimer of merchantability was invalid.

> . . . In Bowers [Mfg. Co. v. Chicago Machine Tool Co., 453 N.E.2d 61, 67 (Ill.App. 1983)], the warranty provisions of a warranty card were on the back of the card as was a disclaimer.  The front of the card contained a statement that warranty provisions were on the back of the card.  The disclaimer was held to be conspicuous.  The court noted a reasonable person would likely have read the back.

11

Carpenter, 551 N.E.2d at 728-29 (emphasis added).  The Illinois
Appellate Court thus placed emphasis upon the location of notice,
alerting the affected party of the disclaimer of warranties; the
size, i.e., the typeface of the disclaimer; and the nature of the
documents at issue, i.e., whether a reasonable person might think
to look at that portion of the documents.  See id.

The Illinois Appellate Court then applied these factors to
the facts of the pending case.  Carpenter, the plaintiff, bought
a mobile home from Mobile World, Inc. ("Mobile"), one of the
defendants to the action, and brought suit seeking, inter alia,
compensatory damages from Mobile for the alleged breach of
implied warranties.  Id. at 725.  Mobile argued that it
effectively excluded any such implied warranties by including a
paragraph, in enlarged print on the back of its sales contract,
which stated:

> (9) Exclusion of warranties.  I understand that the
> implied warranties on merchantability and fitness for a
> particular purpose and all other warranties express or
> implied are excluded by you from this transaction and
> shall not apply to the goods sold.  I understand that
> you make no warranties whatsoever regarding the unit or
> any appliances or component contained therein, except
> as may be required under applicable State law.

Id. at 728.

The Illinois Appellate Court, relying upon the above-
discussed precedent, reasoned that:

> Plaintiff points out that here, as in Anderson, the
> disclaimer was on the back, and here, as in Anderson,

12

> no statement on the front of the document stated a
> disclaimer was made on the back of the document.
> Plaintiff maintains the precedent of <u>Anderson</u> requires
> us to determine the disclaimer here was not
> conspicuous.  However, here the document of sale does
> not appear to lack writing on its back, <u>and above the
> line on the front for signature by the buyer, in
> enlarged print, as large as any on the front, is a
> statement that buyer has read the back of the
> agreement.</u> . . .  Here, [as in <u>Bowers</u>], a reasonable
> buyer would have seen the certificate indicating he had
> read the back of the document and, at least looked at
> the back.  <u>If such a person had looked at the back he
> would have seen the disclaimer, which was in bold face.</u>

<u>Id.</u> at 729.  Based upon its analysis, the Illinois Appellate

Court reversed the judgment entered in Carpenter's favor on the

claims sounding in Mobile's alleged breach of implied warranties.

<u>Id.</u> at 729.

The Court finds that this case is similar to <u>Carpenter</u> and

finds the reasoning there espoused by the Illinois Appellate

Court persuasive.  Here, the Sales Contract provided notice to

the reader, that the Sales Contract incorporated additional terms

that appeared "on the attached hereof."  It also prompted the

reader, immediately above the line for signature by the buyer, to

note that the buyer accepted "[t]he Sales Contract including the

terms and conditions of sale contained here[.]"  These notices

appeared in the same print as all other terms and conditions

appearing in the Sales Contract.

The Court also finds that this case is dissimilar to

<u>Anderson</u>, as discussed in <u>Carpenter</u>, to the extent that the Sales

13

Contract and attached "OKK USA Corporation Terms and Conditions of Sale" do not appear, as the back of the slip in <u>Anderson</u> appeared, to be the kind of documents that would lack text.  A reasonable person, holding these three sheets of paper, would have expected and/or known that each of the three sheets contained important information about the sale at issue.

The Court finally notes that the exact term at issue, the limitation and/or exclusion of warranties, appears in bold text and in all capital letters.  As such, if "a person," such as the representative of General Tool "had looked at the back he would have seen the disclaimer, which was in bold face."  <u>Id.</u>

The Court has accordingly determined that the exclusion of warranties was conspicuous and effective.

**CONCLUSION**

The Court, for the reasons set forth above, will grant the motion.  The Court will issue an appropriate order and judgment.


                                        s/ Mary L. Cooper
                                        **MARY L. COOPER**
                                        United States District Judge

Dated: October 27, 2011

14